Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000932
28-FEB-2017
08:33 AM

NO. CAAP-12-0000932

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STEVEN KALANI PALAMA, SUCCESSOR TRUSTEE OF THE
PHILIP K. PALAMA, JR. REVOCABLE LIVING TRUST
DATED JULY 19, 1994, et al.,
Plaintiffs-Appellees/Cross-Appellants,
v.
GILBERT MEDEIROS, SR., et al.,
Defendant-Appellant/Cross-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 99-0050)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Fujise and Reifurth, JJ.)

This appeal arises from a long running dispute
regarding property rights between members of the Palama family
and members of the Medeiros family.  A prior quiet title action
brought by members of the Palama family against members of the
Medeiros family culminated in a 1968 decision of the Hawai'i
Supreme Court in Palama v. Sheehan, 50 Haw. 298, 440 P.2d 95
(1968).

Defendant-Appellant/Cross-Appellee Antone "Max"
Medeiros (Max Medeiros) appeals from and Plaintiffs-
Appellees/Cross-Appellants Steven Kalani Palama, Patricia M.
Palama, Violet K. Ihara, and Iris P. Hornstine (collectively, the

Palamas)[1] cross-appeal from the Revised Final Judgment of the Circuit Court of the Fifth Circuit (Circuit Court).[2] The Revised Final Judgment entered judgment in favor of the Palamas and against Max Medeiros, Gilbert Medeiros, Jr., and Mary K. Adviento (collectively, the Medeiros Trial Defendants) on Counts 1, 3, and 4 of the Palamas' First Amended Verified Complaint (Amended Complaint).

The Revised Final Judgment was entered pursuant to the Circuit Court's Decision and Order which, among other things: (1) enjoined the Medeiros Trial Defendants from trespassing on the Palamas' property, other than to participate in the exercise of customary and traditional native Hawaiian gathering rights and cultural practices, as determined by the Circuit Court or other court of competent jurisdiction, or to gain access via an established right-of-way to their kuleanas or to the beach reserve owned by the State of Hawai'i (State); (2) issued a mandatory injunction against the Medeiros Trial Defendants which required them to remove structures built on the Palamas' property as determined by a Shoreline Certification Survey ordered by the Circuit Court; (3) declared that the Medeiros Trial Defendants were entitled to access areas in which salt flats and a heiau[3] were located to exercise customary and traditional native Hawaiian gathering rights and cultural practices, but were not entitled to access or use Nomilo Pond; (4) ordered the Palamas

---

[1] In this case, Steven Kalani Palama appears as Successor Trustee of the Philip K. Palama, Jr., Revocable Living Trust dated July 19, 1984, Violet K. Ihara appears as Trustee of the Violet K. Ihara Trust dated January 23, 1992, and Iris P. Hornstine appears as Trustee under that Certain Trust Agreement dated August 4, 1994. Steven Kalani Palama, as Successor Trustee of the Philip K. Palama, Jr., Revocable Living Trust dated July 19, 1984, was substituted as a plaintiff for Philip K. Palama, Jr., after Philip K. Palama, Jr., passed away.

[2] The Honorable Randal G.B. Valenciano presided over the proceedings relevant to this appeal.

[3] A "heiau" is defined as a "[p]re-Christian place of worship, shrine; some heiau were elaborately constructed stone platforms, others were simple earth terraces. Many are preserved today." Mary Kawena Pukui & Samuel H. Ebert, Hawaiian Dictionary 64 (rev. ed. 1986).

2

and the Medeiros Trial Defendants to hire a surveyor to locate the right-of-way easement as determined in the prior <u>Palama v. Sheehan</u> litigation and imposed certain limitations on the scope of the right-of-way; (5) identified the location of Parcel 9, the "House Lot" parcel owned by members of the Medeiros family, and ordered the installation of boundary markers for Parcel 9, but declined to identify the location of Parcel 8, the "Salt Pond" parcel owned by members of the Medeiros family; and (6) ordered the Palamas and the Medeiros Trial Defendants to agree on a private surveyor to conduct a Shoreline Certification Survey and to determine the boundaries of property owned by the Palamas, Parcel 9 owned by members of the Medeiros family, and the beach reserve owned by the State.

In his *pro se* appeal, Max Medeiros argues that the Circuit Court erred in: (1) failing to dismiss the claims against Max Medeiros once his father, Defendant Gilbert Medeiros, Sr., passed away and was dismissed from the case; (2) failing to dismiss the case based on the doctrines of res judicata, collateral estoppel, judicial estoppel, or collateral attack; (3) granting an injunction and ordering a survey without all of the parties affected participating in the trial; (4) failing to dismiss the case for failure to prosecute; and (5) awarding costs to the Palamas.

In their cross-appeal, the Palamas argue that the Circuit Court erred in finding that the Medeiros Trial Defendants were entitled to access the Palamas' property to engage in traditional and customary native Hawaiian gathering rights and cultural practices with respect to (1) making salt in the area described as the "Salt Pans" or the "Salt Flats" and (2) visiting a heiau in the area adjacent to the mauka[4] end of Nomilo Pond. As to the making of salt, the Palamas acknowledge that the Medeiros Trial Defendants presented some evidence to support

---

[4] "Mauka" means "[i]nland, upland, towards the mountain[.]" Pukui & Elbert, <u>Hawaiian Dictionary</u> 242, 365.

their claim, but contend that the evidence presented was insufficient. As to visits to the heiau, the Palamas assert that "there is little evidence in the record to support even the existence of a heiau on the Palamas' property, let alone the existence of any traditional and customary native Hawaiian right held by the Medeiros [Trial] Defendants to be exercised at such a heiau."

As explained below, we conclude that Max Medeiros' claims of error in his appeal are without merit. In the Palamas' cross-appeal, we affirm the Circuit Court's ruling with respect to the making of salt, and we vacate and remand for further proceedings the Circuit Court's ruling relating to visits to the heiau.

BACKGROUND

I.

The dispute in this case involves property owned by the Palamas (Palama Property), property owned by members of the Medeiros family (Medeiros Property), and a 100 foot beach reserve (Beach Reserve) owned by the State. The Palama Property consists of 59.4 acres of land, located on the island of Kaua'i in the ahupua'a[5] of Kalāheo, and includes an approximately 18 acre fish pond known as Nomilo Pond. The Palama Property is designated Tax Map Key (TMK) No. (4)2-3-010-002.

At the time this action was filed, there were four 'apanas of two different kuleanas[6] in the ahupua'a of Kalāheo that were excluded from the Palama Property. These four 'apanas were: (1) Parcel 8, designated TMK No. (4)2-3-010-008, consisting of

---

[5] "Ahupua'a" is defined as a "[l]and division usually extending from the uplands to the sea[.]" Pukui & Elbert, Hawaiian Dictionary 9.

[6] "Kuleana" means "a small area of land such as were awarded in fee by the Hawaiian monarch, about the year 1850, to all Hawaiians who made application therefor[,]" Palama v. Sheehan, 50 Haw. 298, 299 n.1, 440 P.2d 95, 96 n.1 (1968) (quotation marks and citation omitted), and it is also defined, in relevant part, as a "small piece of property, as within an ahupua'a[.]" Pukui & Elbert, Hawaiian Dictionary 179. An "'apana" is defined, in relevant part, as a "land parcel [or] lot[.]" Id. at 28. "A kuleana, land division, may consist of several 'apana." Id.

4

0.0317722 acre (1,384 square feet); (2) Parcel 9, designated TMK No. (4)2-3-010-009, consisting of 0.1154729 acre (5,030 square feet); (3) Parcel 3, designated TMK No. (4)2-3-010-003, consisting of 0.08 acre; and (4) Parcel 7, designated TMK No. (4)2-3-010-007, consisting of 0.14 acre.[1/] The Medeiros Property consists of Parcels 8 and 9. Parcels 3 and 7 were owned by other individuals.

The Palamas and members of the Medeiros family disputed the precise location of the Medeiros Property. The Palamas and members of the Medeiros family also disputed the extent to which members of the Medeiros family were entitled to enter the Palama Property to gain access to the Medeiros Property and to engage in various activities on the Palama Property.

## II.

Several decades prior to this case, Philip K. Palama, Sr., and Hisako Komaki Palama (collectively, the Senior Palamas), the Palamas' predecessors in interest, filed an action in 1964 to quiet title to the Palama Property in the Circuit Court in Civil No. 589 against numerous defendants, including Rebecca P. Medeiros, Elizabeth P. Medeiros, Nancy K.P. Swanson, Alice K.P. Kealoha, Lani Keliiaa, and Thomas Pratt, Jr. (collectively, the Senior Medeiroses), the predecessors in interest to members of the Medeiros family. In that case, the Senior Medeiroses claimed an ancient Hawaiian right-of-way or right-of-way by necessity through the Palama Property and also claimed ancient Hawaiian fishing rights in Nomilo Pond.

The Circuit Court entered a judgment in 1966 which quieted title to the Palama Property (excluding Parcels 8, 9, 3, and 7) in favor of the Senior Palamas and against the defendants, including the Senior Medeiroses; established the boundaries for the Palama Property; granted the defendants the "reasonable use"

---

[1/] Parcels 8 and 9 were 'apanas of Land Commission Award (LC Aw.) 3395B and were subsequently memorialized in Royal Patent 7627. Parcels 3 and 7 were 'apanas of LC Aw. 6647. The size of Parcels 8, 9, 3, and 7 were taken from the Amended Complaint.

of the existing right-of-way through the Palama Property to gain access to their respective parcels and the right to pass over the Palama Property to gain access to the public beach at Nomilo; and determined that Nomilo Pond, which was located within the Palama Property, was owned exclusively by the Senior Palamas and that the defendants had "no rights to fish in it or use boat for fishing upon its waters." Although excluding Parcels 8, 9, 3, and 7 from the Palama Property, the Circuit Court did not determine the precise location of these parcels, but instead left the boundaries of these parcels to be "proved by subsequent surveys."

The Senior Palamas appealed the Circuit Court's judgment in Civil No. 589 to the Hawai'i Supreme Court, challenging the Circuit Court's grant to defendants of the right-of-way through the Palama Property and its refusal to clarify or impose limits on the use of the right-of-way. Palama, 50 Haw. at 299, 440 P.2d at 97. The defendants, including the Senior Medeiroses, did not appeal. The supreme court affirmed the judgment of the Circuit Court, holding that the defendants, by reason of necessity, were entitled to a right-of-way through the Palama Property as a means of ingress and egress. Id. at 301, 440 P.2d at 98. The supreme court further held that the Circuit Court's decision that the right-of-way was subject to "reasonable use" was sufficient and that the Circuit Court was not required to establish the precise width for the right-of-way or limit it to pedestrian and equestrian use. Id. at 302-03, 440 P.2d at 98-99.

### III.

The Palamas commenced the instant case by filing a Verified Complaint on February 26, 1999. The defendants were Gilbert Medeiros, Sr., Anthony K. Medeiros, Bernice K. Gordon, Mary K. Adviento, Michael B. Medeiros, Timothy M. Medeiros, William K. Medeiros, Florence L. Loebl, Charles D. Vallero, Thomas Pratt, Jr., Alice N. Kealoha, Sally Tanigawa, David K. Kealoha, Douglas K. Kealoha, Daniel K. Kealoha, Karin Steck,

Gilbert Medeiros, Jr., and Max Medeiros (collectively, the Medeiros Family Defendants)[8]; Jeannette Komae, Harry M. Sasaki, Richard Asato, and Elaine Kauahi (collectively, the "Komae Defendants"); and the State.

In the Verified Complaint, the Palamas alleged that without the consent of the Palamas, the Medeiros Family Defendants have entered the Palama Property and:

> (1) placed rocks in Nomilo Pond; (2) entered Nomilo Pond and removed various items therefrom; (3) boated, fished and gathered clams in Nomilo Pond; (4) used a bulldozer and/or other heavy equipment to remove soil and plant growth from the shore of Nomilo Pond; (5) filled a fresh water spring with dirt; (6) driven onto and parked in areas other than as necessary for ingress and egress; (7) erected a cement structure approximately four feet square and one foot high; (8) erected an outhouse and water containment/catchment structure; (9) established a permanent camp, including the construction of an illegal, non-permitted house; (10) allowed dogs and/or other animals to run loose; (11) made various unauthorized plantings; (12) constructed an unauthorized salt pan and well; (13) left copious quantity of trash upon the [Palama] Property; (14) destroyed various endangered and/or protected plants; and (15) generally desecrated what was heretofore a sacred place.

The Palamas sought injunctive relief against the Medeiros Family Defendants to prevent them from entering the Palama Property for any reason other than reasonable use of the right-of-way, to prevent them from engaging in activity on Nomilo Pond, and to require them to remove all unauthorized structures (Count 1); damages against the Medeiros Family Defendants for trespass (Count 2); determination and fencing of boundaries around Parcels 8, 9, 3, and 7, and the Beach Reserve (Count 3); and declaratory judgment to establish the scope and meaning of "reasonable use" of the right-of-way through the Palama Property as granted by the Circuit Court's 1966 judgment that was affirmed by the supreme court in Palama v. Sheehan (Count 4).

The Palamas subsequently filed the Amended Complaint which added counts for quieting title to the Palama Property

---

[8] Gilbert Medeiros, Jr., and Max Medeiros were not originally named as defendants in the Verified Complaint, but they were identified as Doe Defendants and added as defendants shortly after the Verified Complaint was filed.

against the State, the Medeiros Family Defendants, and the Komae Defendants (Count 5); damages for alleged harassment by the Medeiros Family Defendants and their associates (Count 6); and punitive damages against the Medeiros Family Defendants (Count 7).

During the course of the litigation and prior to the evidentiary portion of trial, all the defendants except the three Medeiros Trial Defendants (Max Medeiros, Gilbert Medeiros, Jr., and Mary K. Adviento) were dismissed from the case or settled with the Palamas. The Palamas purchased Parcels 3 and 7, which were owned by the Komae Defendants, and the Komae Defendants were dismissed from the case with prejudice. The Palamas entered into a settlement with the State. With respect to the Medeiros Family Defendants, (1) the Palamas entered into a settlement with Michael B. Medeiros, Timothy M. Medeiros, William K. Medeiros, Florence L. Loebl, and Charles D. Vallero, and those defendants were dismissed with prejudice; (2) defaults were entered against Anthony K. Medeiros, Bernice K. Gordon, Thomas Pratt, Jr., Alice N. Kealoha, Sally Tanigawa, David K. Kealoha, Douglas K. Kealoha, Daniel K. Kealoha, and Karin Steck; and (3) Gilbert Medeiros, Sr., who had passed away, was dismissed for failure to substitute a party for him after a suggestion of death had been filed.

Prior to trial, the Circuit Court also granted the Palamas' motion to dismiss Counts 2, 5, 6, and 7 of the Amended Complaint against the Medeiros Trial Defendants.

IV.

The case proceeded to trial on Counts 1, 3, and 4 of the Palamas' Amended Complaint against the three Medeiros Trial Defendants. The Medeiros Trial Defendants, who are siblings and the biological children of Gilbert Medeiros, Sr., represented themselves without an attorney at trial. At the conclusion of trial, the Circuit Court issued a written Decision and Order.

In its Decision and Order, the Circuit Court first ruled on Count 3, which sought a determination and fencing of boundaries. The Circuit Court accepted the testimony of two

experts who testified at trial as to the location of Parcel 9, and it ordered the Palamas and the Medeiros Trial Defendants to hire a surveyor to identify and install boundary markers for Parcel 9. The Circuit Court found there was insufficient evidence to locate Parcel 8 and declined to identify the location of Parcel 8. As to the State's Beach Reserve, the Circuit Court ruled that although the width of the Beach Reserve remained fixed at 100 feet from the shoreline, the boundary of the Beach Reserve may have shifted through changes in the shoreline since the last survey in 1938. The Circuit Court ordered the Palamas and the Medeiros Trial Defendants to agree on a surveyor to conduct a Shoreline Certification Survey and to determine the boundaries of the Beach Reserve, the Palama Property, and Parcel 9. The Circuit Court noted that this determination was not for the sake of the Palamas' quiet title claim, which had been dismissed, but rather to establish whether any of the structures constructed by the Medeiros Trial Defendants, which the Circuit Court identified as a memorial, a pavilion, several water tanks, a shower, and an outhouse (the Medeiros Structures), were on the Palama Property.

With respect to the Palamas' request for declaratory relief in Count 4 on the meaning and scope of the reasonable use of the right-of-way through the Palama Property, the Circuit Court ruled that: (1) the Medeiros Trial Defendants had established their entitlement to access the area described at trial as the "Salt Flats" or "Salt Pans" to exercise customary and traditional native Hawaiian gathering rights of making and harvesting salt; (2) they had established their entitlement to access a heiau, which the Circuit Court described as being adjacent to the mauka end of the Nomilo Pond, to conduct traditional Native Hawaiian practices; but (3) they had failed to establish their entitlement to access or engage in traditional or customary native Hawaiian activities or practices in Nomilo Pond. The Circuit Court also reaffirmed the right-of-way established in the prior Palama v. Sheehan case, and it ordered the Palamas and the Medeiros Trial Defendants to jointly hire a surveyor and bear

9

the costs of a survey to specifically delineate and mark the boundaries of the right-of-way. The Circuit Court also placed restrictions on the types of vehicular access permitted on the right-of-way and where vehicles may be parked.

With respect to the Palamas' request for injunctive relief in Count 1, the Circuit Court issued an injunction prohibiting the Medeiros Trial Defendants from trespassing on the Palama Property, other than to participate in the exercise of customary and traditional native Hawaiian gathering rights and cultural practices, as determined by the Circuit Court or other court of competent jurisdiction, or to gain access via the established right-of-way to the Medeiros Property or to the Beach Reserve. The Circuit Court also found that the Medeiros Structures had been built without authorization, and it issued a mandatory injunction against the Medeiros Trial Defendants requiring them to remove any of the Medeiros Structures that were built on the Palama Property as determined by the Shoreline Certification Survey.

The Palamas filed a motion to reconsider and alter and amend the Decision and Order. The Circuit Court entered its Final Judgment and denied the Palamas' motion.

Max Medeiros appealed, and the Palamas cross-appealed from the Final Judgment. This court dismissed that appeal for lack of appellate jurisdiction because the Final Judgment did not specifically resolve all claims or contain the finding necessary for certification under Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b), as required for an appealable judgment. See Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994).

V.

After this court dismissed the appeal from the Final Judgment, the Palamas moved for appointment of a surveyor to conduct the Shoreline Certification Survey required by the Circuit Court's Decision and Order. The Circuit Court granted this motion. Max Medeiros filed a motion to dismiss the case for

10

failure to prosecute.  In his supporting memorandum, Max Medeiros argued that the Palamas had failed to take meaningful action to correct the defective Final Judgment, which prevented him from appealing, while the Palamas were pursuing a survey.  The Palamas subsequently filed a motion to revise the Final Judgment to render it appealable.  The Circuit Court denied Max Medeiros' motion to dismiss and granted the Palamas' motion to revise the Final Judgment.  The Circuit Court issued its Revised Final Judgment on October 2, 2012, and this appeal followed.

DISCUSSION

I.

We first address the claims of error raised by Max Medeiros in his appeal.  As explained below, we conclude that he has failed to show that the Circuit Court erred with respect to his claims of error.

A.

On the day the trial was scheduled to begin, Max Medeiros filed a motion to dismiss the case for failure to name indispensable parties, pursuant to HRCP Rule 19 (2000).  In particular, Max Medeiros argued that his father, Defendant Gilbert Medeiros, Sr., had passed away during the pendency of the lawsuit, but no attempt was made to include Gilbert Medeiros, Sr.'s estate as a party.  He further argued that other interested parties with claims to the Medeiros Property had not been named as defendants.  Prior to the start of the evidentiary portion of trial, the Circuit Court dismissed Gilbert Medeiros, Sr., from the case because no attempt had been made to substitute his estate as a party for several years after his suggestion of death had been filed.  The Circuit Court denied Max Medeiros's motion to dismiss the case for failure to join an indispensable party.

On appeal, Max Medeiros asserts that of the four defendants who remained just prior to the beginning of trial, Gilbert Medeiros, Sr., was the only defendant who had any ownership interest in the Medeiros Property.  Max Medeiros contends that the Circuit Court erred in failing to dismiss the

11

claims against him once Gilbert Medeiros, Sr., was dismissed from the case without Gilbert Medeiros, Sr.'s estate being substituted as a party. We disagree.

We conclude that Max Medeiros' argument turns on whether under HRCP Rule 19, the Circuit Court erred in proceeding to trial without Gilbert Medeiros, Sr.'s estate as a party. If the Circuit Court did not err in proceeding to trial, then the dismissal of Gilbert Medeiros, Sr., and the failure to substitute his estate as a party would not require the dismissal of the claims against Max Medeiros.

We review the Circuit Court's decisions regarding indispensable parties under HRCP Rule 19 for abuse of discretion. Marvin v. Pflueger, 127 Hawaiʻi 490, 495, 280 P.3d 88, 93 (2012). The Circuit Court abuses its discretion when "it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (quotation marks and citation omitted).

HRCP Rule 19 provides:

> (a) **Persons to be joined if feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

> (b) **Determination by court whenever joinder not feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate;

fourth, whether the plaintiff will have an adequate remedy
if the action is dismissed for nonjoinder.

The analysis under HRCP Rule 19 typically follows two steps:

First, the court must determine whether an absent party
should be joined if feasible according to the factors listed
in subsection (a). Second, if the party meets the
requirements under subsection (a) but it is not feasible to
join the party to the lawsuit, the court must proceed to
Rule 19(b) to determine whether it may decide the case
without the nonparty.

Marvin, 127 Hawai'i at 499, 280 P.3d at 97 (footnote and
citations omitted).

The Palamas argue that Max Medeiros did not establish
that Gilbert Medeiros, Sr.'s estate was an absent party to be
joined if feasible under the standards set forth in HRCP Rule
19(a). We do not need to address this argument because even if
Gilbert Medeiros, Sr.'s estate met the requirements under HRCP
Rule 19(a) of an absent party to be joined if feasible, we
conclude that the Circuit Court did not abuse its discretion in
denying Max Medeiros' HRCP Rule 19 motion to dismiss and
proceeding to trial without Gilbert Medeiros, Sr.'s estate as a
party pursuant to HRCP Rule 19(b).

HRCP Rule 19(b) provides four factors to consider in
determining whether "in equity and good conscience" an action may
proceed without a person as a party:

[F]irst, to what extent a judgment rendered in the person's
absence might be prejudicial to the person or those already
parties; second, the extent to which, by protective
provisions in the judgment, by the shaping of relief, or
other measures, the prejudice can be lessened or avoided;
third, whether a judgment rendered in the person's absence
will be adequate; fourth, whether the plaintiff will have an
adequate remedy if the action is dismissed for nonjoinder.

These four factors are not exclusive, and HRCP Rule 19(b)'s
"equity and good conscience" language gives the trial court
considerable flexibility to consider the particular circumstances
of each case in determining whether a non-party will be regarded
as indispensable. Marvin, 127 Hawai'i at 504, 280 P.3d at 102.

As noted, the Revised Final Judgment entered by the Circuit Court granted relief as between the Palamas and the Medeiros Trial Defendants. In particular, the injunctive relief granted by the Circuit Court did not bind anyone other than the Medeiros Trial Defendants.[9] The Circuit Court's Revised Final Judgment also did not purport to impose obligations on non-parties to the litigation. Although Gilbert Medeiros, Sr., died several years before the trial held in this case, his estate did not seek to intervene, and Max Medeiros waited until the day of trial to file his motion to dismiss under HRCP Rule 19. See Marvin, 127 Hawai'i at 504-12, 280 P.3d at 102-10 (citing the non-binding effect of the court-imposed injunction on the non-party, the non-party's failure to file a motion to intervene, and the defendant's long delay in raising the indispensable party claim as factors supporting the trial court's determination that the non-party was not an indispensable party).

In addition, the Circuit Court's Revised Final Judgment was able to adequately resolve the question of the Palamas' entitlement to injunctive relief against the Medeiros Trial Defendants and provide the Palamas with a remedy in a long running dispute over property rights. As the supreme court observed in Marvin: "We understand the benefits of having all desirable parties before the court in every case. However, we also know that, as a practical matter, this is not always possible and, at some point, cases must come to trial." Id. at 512, 280 P.3d at 110 (emphasis added). The Circuit Court referenced such considerations in orally denying Max Medeiros' motion to dismiss, noting that this case initially began in 1999 and that it was necessary to move forward with the case to resolve the dispute between the existing parties.

Under these circumstances, we conclude that the Circuit Court did not abuse its discretion in determining that Gilbert

---

[9] The Palamas acknowledged that they would not be able to obtain an injunction against "someone who is not in the lawsuit," but only against the three Medeiros Trial Defendants.

14

Medeiros, Sr.'s estate was not an indispensable party and in denying Max Medeiros' HRCP Rule 19 motion to dismiss. The absence of Gilbert Medeiros, Sr.'s estate as a party did not prevent the Circuit Court from determining and providing effective relief regarding the claims between the Palamas and the Medeiros Trial Defendants. Contrary to Max Medeiros' contention, we conclude that the Circuit Court was not required to dismiss the claims against Max Medeiros after Gilbert Medeiros, Sr.'s estate was not substituted as a party and Gilbert Medeiros, Sr. was dismissed from the case.

B.

Max Medeiros challenges the Circuit Court's Revised Final Judgment based on the doctrines of res judicata, collateral estoppel, judicial estoppel, and collateral attack. In particular, Max Medeiros appears to contend that decisions rendered by the Circuit Court in Civil No. 589 and the supreme court in Palama v. Sheehan, 50 Haw. 298, 440 P.2d 95, (collectively, the "Prior Litigation") precluded the Circuit Court from establishing the boundary for Parcel 9 or providing declaratory relief regarding the scope of the right-of-way. The premise of Max Medeiros' argument is that the Prior Litigation had already decided these issues. However, it is clear that the Prior Litigation did not decide these issues, but left them open to future determination. Accordingly, the premise of Max Medeiros' argument is erroneous, and we conclude that his challenge to the Circuit Court's Revised Final Judgment based on the various preclusion doctrines he raises is without merit.

With respect to the boundary for Parcel 9, the Circuit Court in the Prior Litigation did not determine the precise location of Parcel 8 or Parcel 9, but instead left the boundaries of these parcels to be "proved by subsequent surveys[.]" The Circuit Court's ruling on this issue in the Prior Litigation was not appealed to the supreme court. Accordingly, the Prior Litigation did not establish the location and boundary of Parcel 9, and the Circuit Court in this case was not precluded from

15

entering an order identifying the location of Parcel 9 and requiring the parties to hire a surveyor to identify and install boundary markers for Parcel 9.

With respect to the scope of the right-of-way, the supreme court in the Prior Litigation upheld the Circuit Court's ruling that the right-of-way was subject to "reasonable use" and declined to require clarification of the precise width for the right-of-way or to impose specific limits on what constituted "reasonable use." Palama, 50 Haw. at 302-03, 440 P.2d at 98-99. Accordingly, the Prior Litigation did not bar the Circuit Court in this case from providing declaratory relief on the scope of the right-of-way and the uses that would be deemed to be reasonable. Because the Prior Litigation did not decide the boundary or right-of-way issues addressed by the Circuit Court in this case, we conclude that the Circuit Court was not barred from deciding these issues by the doctrines of res judicata, collateral estoppel, judicial estoppel, or collateral attack.

C.

Max Medeiros argues that the Circuit Court erred in granting an injunction and ordering a survey without all of the parties affected participating in the trial. We disagree.

As noted, the Circuit Court's injunction was only issued against the Medeiros Trial Defendants. Indeed, HRCP Rule 65(d) (2000) provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order[.]" The Shoreline Certification Survey ordered by the Circuit Court was necessary to implement the Circuit Court's injunction, which only required the Medeiros Trial Defendants to remove the Medeiros Structures if they were located on the Palama Property. Moreover, as previously discussed, the Circuit Court did not abuse its discretion in proceeding to trial after the dismissal of Gilbert Medeiros, Sr., and without the substitution of his estate as a party. Contrary to Max Medeiros' claim, we

16

conclude that the Circuit Court did not "overstep[] its authority" in granting the injunction and ordering the survey.

D.

Max Medeiros contends that the Circuit Court erred when it denied his motion to dismiss for failure to prosecute under HRCP Rule 41(b) (2012). The motion was filed twenty-seven months after this court's order dismissing the prior appeal due to defects in the original Final Judgment. In the motion, Max Medeiros argued that the Palamas had failed to take action to obtain a valid revised final judgment from the Circuit Court. We conclude that the Circuit Court did not abuse its discretion in denying the motion. See Wilson v. Freitas, 121 Hawai'i 120, 133, 214 P.3d 1110, 1123 (App. 2009). (stating that "[a]n order granting a motion to dismiss for failure to prosecute is reviewed for abuse of discretion").

Here, the case had already proceeded to trial and the Circuit Court had issued a decision on the merits before Max Medeiros filed his motion to dismiss under HRCP Rule 41(b). After the case was returned to the Circuit Court, the Palamas filed a motion to substitute Steven Kalani Palama, Successor Trustee of the Philip K. Palama, Jr., Revocable Living Trust dated July 19, 1994, for Plaintiff Philip K. Palama, Jr., who had passed away. The Palamas also filed a motion to appoint a surveyor to conduct the Shoreline Certification Survey ordered by the Circuit Court in its Decision and Order. As noted, Max Medeiros did not file his motion to dismiss for failure to prosecute until over two years after this court's order dismissing the prior appeal. The Palamas' filed their motion to revise the Final Judgment within two months of Max Medeiros' motion to dismiss. The Circuit Court filed its Revised Final Judgment three months after the Palamas' motion, and it also ruled on other matters in the interim.

"[D]ismissal of a complaint is such a severe sanction, that it is to be used only in extreme circumstances when there is a clear record of delay or contumacious conduct[.]" Bagalay v.

17

Lahaina Restoration Foundation, 60 Haw. 125, 132, 588 P.2d 416, 422 (1978) (internal quotation marks and citation omitted). We conclude that the Circuit Court acted within its discretion in denying Max Medeiros' motion to dismiss under the circumstances of this case.

E.

Max Medeiros contends that he, and not the Palamas, was the prevailing party, and therefore, the Circuit Court erred in awarding costs to the Palamas. The Circuit Court's Revised Final Judgment states that "[c]osts are hereby awarded to [the Palamas] as the prevailing party upon submission of an appropriate Bill of Costs."

We conclude that the Circuit Court did not err in determining that the Palamas were the prevailing party in this case and were entitled to the award of costs. The record, however, does not contain any order awarding costs to the Palamas.[10] Thus, there is no order awarding costs for this court to review in this appeal.[11]

II.

We now turn to address the claims raised by the Palamas in their cross-appeal. The Palamas argue that the Circuit Court erred in finding that the Medeiros Trial Defendants met their burden of establishing their entitlement to access the Palama

---

[10] The Palamas filed a Bill of Costs after the Circuit Court entered its original Final Judgment, but the record does not contain any decision on this Bill of Costs. The record does not show a Bill of Costs filed by the Palamas after the entry of the Revised Final Judgment. The Palamas, in their answering brief, assert that the award of costs in this case is moot because they "did not file a Bill of Costs of the trial as it was not worth the candle."

[11] We note that in his answering brief in the Palamas' cross-appeal, Max Medeiros contends that the Circuit Court erred in ruling that he had no right to use Nomilo Pond. However, Max Medeiros did not raise this claim as a point of error in his appeal, and therefore, he has waived this claim. See Hawai'i Rules of Appellate Procedure Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded[.]"). In any event, Max Medeiros fails to provide a basis to overturn the judgment entered by the Circuit Court in the Prior Litigation which determined that Nomilo Pond was owned exclusively by the Senior Palamas and that the Senior Medeiroses (who were Max Medeiros' ancestors) had "no rights to fish in it or use boat for fishing upon its waters."

Property to engage in traditional and customary native Hawaiian gathering rights and cultural practices (hereinafter, "PASH rights")[12] with respect to (1) making salt in the area described as the "Salt Pans" or the "Salt Flats" and (2) visiting a heiau in the area adjacent to the mauka end of Nomilo Pond. The Palamas do not contend that the Medeiros Trial Defendants cannot prove their entitlement to exercise PASH rights, but rather that the Medeiros Family Defendants failed to present sufficient evidence to prove their entitlement to exercise PASH rights in the areas authorized by the Circuit Court in this case. The Palamas argue that if we agree with their assertion that the Medeiros Defendants failed to present sufficient evidence, we should either: (1) preclude the Medeiros Trial Defendants from exercising the PASH rights recognized by the Circuit Court in its Decision and Order until they prove the existence of these rights in a future case; or (2) remand the case for a trial on the issue of the existence of these rights.

We conclude that the Medeiros Trial Defendants introduced sufficient evidence to support the Circuit Court's finding that they were entitled to exercise PASH rights with respect to the making and harvesting of salt in the area described as the "Salt Pans" or the "Salt Flats" on the Palama Property, and we affirm this ruling of the Circuit Court. However, the basis for Circuit Court's ruling regarding the Medeiros Trial Defendant's exercise of PASH rights at a heiau in the area adjacent to the mauka end of Nomilo Pond is unclear as

---

[12] In Public Access Shoreline Hawaii v. Hawai'i County Planning Commission, 79 Hawai'i 425, 903 P.2d 1246 (1995) (PASH), the Hawai'i Supreme Court recognized that "the *reasonable* exercise of ancient Hawaiian usage is entitled to protection under article XII, section 7 [of the Hawai'i Constitution]," PASH, 79 Hawai'i at 442, 903 P.2d at 1263, and held that "those persons who are '*descendants of native Hawaiians* who inhabited the islands prior to 1778,' and who assert otherwise valid customary and traditional Hawaiian rights under HRS § 1-1, are entitled to protection regardless of their blood quantum." PASH, 79 Hawai'i at 449, 903 P.2d at 1270 (citing Haw. Const., art. XII, § 7). In this appeal, we will refer to traditional and customary native Hawaiian gathering rights and cultural and religious practices that are protected under article XII, section 7 as "PASH rights."

the specific references at trial to the heiau were sparse and ambiguous. We therefore vacate the Circuit Court's ruling as to the heiau and remand the case for more detailed findings and further evidence on the Medeiros Trial Defendants' PASH rights regarding the heiau.

A.

In State v. Hanapi, 89 Hawai'i 177, 970 P.2d 485 (1998), the Hawai'i Supreme Court identified a three-part test that a person must satisfy, at minimum, to establish that his or her conduct is constitutionally protected as a native Hawaiian right. Hanapi, 89 Hawai'i at 185-86, 970 P.2d at 493-94. First, the person "must qualify as a 'native Hawaiian' within the guidelines set out in PASH." Id. at 186, 970 P.2d at 494. Second the person must establish that "his or her claimed right is constitutionally protected as a customary or traditional native Hawaiian practice." Id. Third, the person "must also prove that the exercise of the right occurred on undeveloped or 'less than fully developed property.'" Id.

On appeal, the Palamas do not dispute that the Medeiros Trial Defendants satisfied the first and third factors. The Palamas' challenge to the Circuit Court's finding of PASH rights is limited to their claim that the Medeiros Trial Defendants did not present sufficient evidence at trial to satisfy the second factor with respect to their entitlement to exercise PASH rights at the particular areas on the Palama Property identified by the Circuit Court. The supreme court has stated that for a person to meet his or her burden of satisfying the second factor, "there must be an adequate foundation in the record connecting the claimed right to a firmly rooted traditional or customary native Hawaiian practice." Id. at 187, 970 P.2d at 495 (internal footnote omitted).

B.

The Circuit Court ruled that the Medeiros Trial Defendants had established their entitlement to exercise PASH rights to make and harvest salt in the area of the "Salt Pans" or

"Salt Flats" (hereinafter, the "Salt Flats"), and it described the location of the Salt Flats through references to markings on a survey that had been admitted in evidence. The Circuit Court emphasized that the Medeiros Trial Defendants could only access the Salt Flats, which were near Nomilo Pond, when they were actually making or harvesting salt, limited the routes they could take to access the Salt Flats, and did not permit access by others outside their immediate families.

The Palamas argue that there was insufficient evidence to support the Circuit Court's ruling that the Medeiros Trial Defendants were entitled to exercise PASH rights to make and harvest salt at the Salt Flats. We disagree.

At trial, the Medeiros Trial Defendants provided extensive testimony about their ancestors, including their great grandfather, grandmother, grandfather, and father making salt in the vicinity of the Nomilo Pond; their being taught by family members how to make salt; their identification of the location of salt pans in the vicinity of Nomilo Pond that were used for salt-making activities; and their personal participation in salt making. The Medeiros Trial Defendants also introduced evidence relating to LC Aw. 3395B and the corresponding Royal Patent 7627 (issued in 1882) with respect to the Medeiros Property which referred to the practice of making salt.[13] We conclude that there was sufficient evidence to support the Circuit Court's finding that the Medeiros Trial Defendants had established their entitlement to exercise PASH rights with respect to making and harvesting salt at the Salt Flats.

C.

The Palamas argue that the Circuit Court erred in finding that the Medeiros Trial Defendants were entitled to

---

[13] A study of the archaeology of Kauai published by the Bishop Museum in 1931 described the methods used to make salt from salt pans located on the sea side of Nomilo Pond and stated that "[t]he salt from these [salt] pans was famous." Wendell Clark Bennett, Archaeology of Kauai, Bernice P. Bishop Museum Bulletin 80, at 24, 116 (1931).

exercise <u>PASH</u> rights with respect to a heiau in the area adjacent to the mauka end of Nomilo Pond. As the Palamas point out, specific evidence related to a heiau was sparse. The Palamas assert, and Max Medeiros does not dispute, that the word heiau was only mentioned three times during the course of the trial. The testimony relating to the heiau was brief and lacking in detail. It did not describe the heiau, its precise location, specific details regarding the Medeiros Trial Defendants' connection to the heiau, the practices that the Medeiros Trial Defendants or their ancestors had engaged in at the heiau, or what activities the Medeiros Trial Defendants sought to engage in at the heiau. Accordingly, the basis for the Circuit Court's ruling that the Medeiros Trial Defendants are entitled to exercise <u>PASH</u> rights at a heiau in the area adjacent to the mauka end of Nomilo Pond is unclear, and we agree with the Palamas that the present record is insufficient to support this ruling. We vacate the Circuit Court's ruling on this issue, and we remand the case for more detailed findings and further evidence regarding whether the Medeiros Trial Defendants are entitled to exercise <u>PASH</u> rights at a heiau on the Palama Property.

CONCLUSION

Based on the foregoing, we affirm in part and vacate in part the Circuit Court's Revised Final Judgment, and we remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, February 28, 2017.

On the briefs:

Antone Max Medeiros
Defendant Pro Se
Appellant/Cross-Appellee

*Craig H. Nakamura*

Chief Judge

David W. Proudfoot
Max W.J. Graham, Jr.
(Belles Graham Proudfoot
    Wilson & Chun, LLP)
for Plaintiffs-Appellees/
    Plaintiffs-Cross-Appellants

Associate Judge

Associate Judge

22